*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

UNPUBLISHED
February 25, 2021

v

DWAYNE ANDREW DEAL,

      Defendant-Appellee.

No. 349781
Wayne Circuit Court
LC No. 18-008590-01-FC

Before: JANSEN, P.J., and SERVITTO and RIORDAN, JJ.

Servitto, J. (*concurring*).

I agree entirely with the conclusion reached by the majority. I write separately only to further elaborate upon how the record established that dismissal with prejudice was proper. This matter was, in fact, rife with evidentiary issues and resulting unfairness to defendant caused by the prosecution.

Defendant was first charged with respect to the incident at issue in 2017. That matter ended with a dismissal of the charges against defendant (without prejudice) due to the failure of two of the prosecution's key witnesses to appear at trial. It is unclear whether the prosecution used due diligence to locate the witnesses and/or subpoenaed them to secure their presence.

When the prosecution thereafter recharged defendant with the same crimes, the charges were in jeopardy of again being dismissed, due to the prosecutor's failure to file a witness list within 30 days of the trial date.[1] Although the prosecutor indicated that a witness list in the current matter would be the same as the witness list filed in the prior matter, the trial court nevertheless ordered the prosecutor to file a witness list. She did not do so until long after trial had concluded. And, as will be seen below, whether defendant could rely upon any witness list provided by the prosecution is speculative, at best.

---

[1] MCR 6.201(A)(1) requires disclosure of witnesses a party intends to call at trial and allows for amendment of a witness list without leave of the court no later than 28 days before trial.

On Tuesday, March 5, 2019, the second day of trial, defense counsel advised the trial court that the prosecutor had just provided her with a transcript of a previously unprovided second interview of an essential witness, Dominique Mack. When questioned by the trial court, the prosecutor indicated that she was unaware that the transcript had not been provided, and acknowledged that there were inconsistencies between Mack's first and second interviews. The trial court ruled that the prosecutor could not put Mack on the stand until defense counsel had an opportunity to review the second interview recording and transcript.

Several other discovery issues, all precipitated by the prosecutor, were brought to light on the second day of trial. First, defense counsel advised the trial court that she had just become aware of approximately 12 pages of documents contained in the police file that the prosecutor had not provided to her. The trial court indicated that defense counsel could make copies of the documents. Second, a plea agreement that another witness entered into had not been provided to defense counsel. Third, contact information for Detective Grandison, an officer who had taken one of Mack's statements, had otherwise been involved in the case, and had relocated to another state, had just been provided to defense counsel. This was especially troublesome as the prosecutor had advised defense counsel the prior month that Detective Grandison would be appearing at trial.

Issues with discovery disclosures and witnesses continued to present themselves throughout trial. On the third day of trial, defense counsel advised the trial court that the prosecutor had twice represented to counsel and the court that Detective Doaks, who had interviewed key witness Alexander George, would be appearing at trial. However, defense counsel had just found out that the prosecutor would not, in fact, be bringing Detective Doaks to testify at trial. At that point, the prosecution had already rested its case.[2]

Wanting to gather more information as to why certain police officers were not called as witnesses, the trial court took testimony from the officer in charge of the case, Detective Sergeant MacDonald, outside the presence of the jury. Detective MacDonald testified that he was the initial officer in charge of the case until the summer of 2018, and that he retook that position in February 2019 when he received subpoenas for defendant's trial. Detective MacDonald testified that he did not receive a subpoena for Detective Doaks. Detective MacDonald testified that the prosecutor had just told him the day before that Detective Doaks, who had moved to Seattle, may be needed. The trial court indicated that, having already heard Alexander George's testimony, it could see that Detective Doaks would be necessary to testify about George's prior inconsistent statements.

The trial judge stated that when the prosecutor and defense counsel had appeared at a February 22, 2019 motion hearing, it had been under the impression that the prosecutor had sent

---

[2] The prosecutor's case went badly. The second victim in the case and the prosecutor's primary witness at trial, Alexander George, had testified on many, many occasions that he did not remember his prior testimony or statements, and also denied making certain statements with which he was credited. The prosecutor's second key witness, Dominique Mack, testified that she did not know defendant and did not see any shots fired, and was impeached with her prior testimony that she was afraid of Alexander George, that she had told the deceased victim that she was afraid of Alexander George, and other relevant testimony.

out subpoenas for some police witnesses, because she had stated that she had done so and that the officers would be appearing for trial. The trial court stated that it appeared, however, that the prosecutor did not send the subpoenas out until after that date and within only a few days prior to trial. The trial court opined that the prosecutor was "not trying to produce witnesses" and found it problematic. However, the trial court declined to declare a mistrial at that time and instead indicated it would provide the "adverse jury instruction" with respect to Detective Doaks.

After the trial court declined to declare a mistrial, it was discovered that two of the officers that defense counsel had advised the prosecutor that she needed at trial, Martin and Kachar, had not been subpoenaed. Detective MacDonald told the trial court that the officers were on standby, but that Martin was in Lansing, Michigan and Kachar was home sick. The trial court dismissed the jury for the day and gave the prosecutor and defense counsel time to assert their respective positions on whether the case should be dismissed due to prosecutorial misconduct or failure to produce witnesses.

On Thursday, March 7, 2019, the fourth day of trial, the prosecutor advised the trial court that the prior day, after the trial had concluded for the day, Detective MacDonald had told her that analysis had been made of Mack's phone, as well as phones belonging to a few other witnesses. These so-called "phone dumps" had not been disclosed to defense counsel until the morning of the fourth day of trial. The trial court listed the items that were missing from the case as "the basic elements of presentation of a trial, [] the basic element of trial advocacy, a witness list, subpoenaed witnesses, disclosure of evidence." The trial court again indicated that a mistrial was necessary, but it did not feel that dismissal with prejudice was warranted.

It was only after the multitude of violations by the prosecutor that defendant moved to dismiss the prosecution with prejudice. At the hearing on that motion, Detective MacDonald testified that phones were taken from certain people very shortly after the February 2017 incident involving defendant and that they were sent to the State Police Crime Lab for data extraction. The prosecution signed off on an affidavit for a search warrant of the phones on February 17, 2017. Detective MacDonald testified that the prosecutor's office had his police file, which contained the search warrant for the phones in it, since 2017. Detective MacDonald testified that on Monday March 4, 2019, the first day of trial, he made inquiry regarding the "phone dumps" and was told either on that day, or early the next day, that phone dumps had been done but had not been picked up. According to MacDonald, they were brought to him on Tuesday, March 5, 2019. He testified that he told the prosecutor about the "phone dumps" as soon as he found out about them, and gave her copies on Wednesday, March 6, 2019, prior to trial beginning on that day. Again, the prosecutor did not inform defense counsel or the court of the existence of the phone dumps until Thursday, March 7, 2019.

The credibility of the prosecutor's witnesses was a significant issue at trial, and attacking that credibility was central to the defense's case, particularly because defendant asserted self-defense as his primary defense. It was only after repeated failures on the part of the prosecution to adequately and timely disclose information and to comply with the trial court's orders that the trial court determined that dismissal of the charges against defendant should be with prejudice. Despite defense counsel's several motions for mistrial, the trial court gave the prosecutor every benefit of the doubt with respect to whether her errors and failures were intentional. At the point when motions for mistrial had been denied and the prosecutor *still* failed to adequately and timely

disclose evidence that was potentially exculpatory, there can be no conclusion other than that the prosecutor was intentionally goading defendant into moving for a mistrial. See, e.g. *People v Dawson*, 431 Mich 234, 258; 427 NW2d 886 (1988).

/s/ Deborah A. Servitto